1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS H. GOSS, | Case No. 1:18-cv-00073-LJO-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS |
| v. | |
| PAM AHLIN, et al., | (ECF No. 1, 7, 11) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Thomas H. Goss, a civil detainee, is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed a complaint in this action on January 17, 2018. The matter was referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The complaint was screened by a United States magistrate judge and on March 5, 2018, an order issued requiring Plaintiff to either file a first amended complaint or notify the Court that he was willing to proceed on the claims found to be cognizable. Plaintiff was granted an extension of time to file an amended complaint on April 2, 2018. On April 3, 2018, this matter was reassigned to United States Magistrate Judge Stanley A. Boone. On April 12, 2018, Plaintiff filed a response stating that he did not want to file an amended complaint but wished to proceed on the cognizable claims.

# I.

## SCREENING REQUIREMENT

On March 5, 2018, the complaint in this action was screened and found to state a cognizable substantive due process claim against Defendants Ahlin and Price in their official capacities. (ECF No. 7.) Subsequently the matter was reassigned to the undersigned on April 3, 2018.

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).

Accordingly, screening and rescreening of a complaint that may result in dismissal of claims or defendants may be done at any time. Based on the reassignment of this action the Court exercises its discretion to screen the plaintiff's complaint to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

///

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is a civil detainee at Coalinga State Hospital ("CSH") as a sexually violent predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"), California Welfare and Institutions Code, section 6600 et seq. (Compl. 5,[1] ECF No. 1.) Plaintiff brings three claims in this action. First, Plaintiff alleges that he is being confined in punitive conditions that amount to cruel and unusual punishment in violation of the First, Fourth, Fifth, and Fourteenth Amendments. Second, Plaintiff alleges that he is being denied the right to own and possess a laptop computer to access the internet to view movies, search for daily news, and expressions of others in violation of his rights to freedom of speech and expression under the First and Fourteenth Amendments. Lastly, Plaintiff alleges that he is being denied access to the internet for news gathering, expressions of others, and to buy and shop in violation of the First and Fourteenth Amendments. Plaintiff argues that Title 9, Cal. Code Regs. § 4350 violates expo-facto and double jeopardy regarding Plaintiff's right to be free from punitive actions. Plaintiff's complaint is mainly comprised of argument which the Court finds has made it difficult to determine what claims are actually being raised in this action.

/ / /

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

On December 27, 2017, Plaintiff received a copy of Title 9, section 4350 which was going to be implemented as an emergency amendment. (Compl. 6.) Plaintiff contends that by subjecting him to section 880-892 of Title 9 and section 4350, he is now subjected to the same punitive terms of confinement as inmates sent to the Department of State Hospitals ("DSH") for treatment of a mental health commitment; and therefore, the regulation is punitive in nature. (Compl. 6-7.) Plaintiff states that by implementing and supporting the regulation, Pam Ahlin, Director of State Hospitals, and Brandon Price, Director of CSH, violate the treatment Plaintiff is to receive while civilly committed and also violate expo facto and double jeopardy by being punitive and subjecting him to cruel and unusual punishment. (Compl. 7.) Plaintiff argues that since prisoners are allowed the right to access the internet and games that have the ability to access the internet, denying a SVP identical or similar access violates his rights under the Fifth and Fourteenth Amendments. (Compl. 7-8.)

Plaintiff also contends that banning electronic devices (computers, games, radios, MP3 players, etc.) violates his rights because he has returned to a punitive setting much more restrictive than when he was incarcerated in the California State Prison System which violates his rights under the First, Fourth, Fifth, and Fourteenth Amendments. (Compl. 8.) Plaintiff states that his rights have been violated when Defendants implemented and enforced a computer moratorium preventing him from purchasing approved personal laptop computers and electronic games, and then implementing new regulations, California Code of Regulations, Title 9, section 4350, which allowed the Director of State Hospitals ("DSH") to pick up electronic games and computers already in Plaintiff's possession. (Compl. 8-9.) The DSH has recognized the therapeutic advantages of allowing patients to own and possess certain types of electronic devices to occupy their time during non-treatment or therapeutic hours at the hospital. (Compl. 9.)

On March 7, 2006, patients were allowed the right to own and possess personal laptop computers, DVD players, and PlayStations. (Compl. 9.) The employees were allowed to modify the devices so they were determined not to be accessible to the internet up to five miles or more from the hospital grounds. (Compl. 9.) Plaintiff was allowed to purchase a Palm Pilot for his use with the approval of laptop computers, games, and other electronic accessories. (Compl. 9.) The

administrators at the time stated that ownership of these devices would enhance the therapeutic atmosphere of the hospital.  (Compl. 9.)

In October of 2009, the Director of California Department of State Hospitals took steps to implement section 4350 which prohibited the ownership of desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistants, graphing calculators, and radios (satellite, shortwave, CB, and GPS) by Plaintiff within the DSH.  (Compl. 9-10.)  This regulation took effect in 2010.  (Compl. 10.)  Plaintiff contends that this regulation is overbroad, vague, and punitive.  (Compl. 10.)  As written the regulation does not define or distinguish wireless internet devices that are pre-internet wireless devices, remotes, and electronic devices with no internet capability like a common radio.  (Compl. 10.)  Section 4350 provides defendants with the right to seize any electronic device as internet capable.  (Compl. 10.)  This regulation was placed into effect because of supposed violations of hospital policies and state and federal laws.  (Compl. 10.)  Plaintiff has not violated any hospital policies, or state or federal laws concerning the ownership of his electronic devices.  (Compl. 10.)

On August 16, 2016, Plaintiff learned that defendants planned to implement California Code of Regulations, Title 9, section 4350-Contraband Electronic Devices with Communication and Internet Capabilities.  (Compl. 10.)  Plaintiff contends that this is a prison regulation.  (Compl. 10.)  Plaintiff contends that the regulation applies to the California Department of Corrections and Rehabilitations ("CDCR") and applying it to civilly committed individuals places the civil detainee in the category of a prisoner subject to punishment.  (Compl. 10.)  Plaintiff states that prisons and other local penal institutions are allowed to have the electronic devices that he is being prevented from owning.  (Compl. 10.)

The CDCR is currently allowing the advancement of technology within the prison industry by purchasing 500 tablets to be used by inmates at the California Men's Colony as a tool for educational and vocational training.  (Compl. 10.)  These wireless devices allow inmates to communicate work assignments and tests via wireless communication to the prison instructor without the need of a classroom.  (Compl. 10-11.)  For entertainment purposes, the CDCR allows X-Boxes and PlayStations as long as the wireless devices are inoperable and disconnected.

(Compl. 11.)  State prisoners are allowed to purchase and own computer tablets, PlayStations, and X-Boxes without security concerns as long as the internet devices are disconnected.  (Compl. 11.)  Plaintiff contends that he is being subjected to punitive conditions by not being allowed to own the same items.  (Compl. 11.)

On December 23, 2017, Plaintiff received a copy of the proposed regulation that Pam Ahlin is implementing to now include electronic devices other than Wi-Fi.  (Compl. 11.)  Brandon Price will be enforcing this new regulation.  (Compl. 11.)  This amended regulation will remove from Plaintiff the ability to own all media devices which have the capability to store data: including Plaintiff's MP3 player which stores music for entertainment; flash drives used to store legal materials, letters, and briefs; hard drives used to store legal data, music, and television series, and storage of current court decisions and opinions.  (Compl. 11.)  Since 2014, patients have been allowed to scan their legal work to digital copies and stored these copies on personal hard drives to remove excess storage of paperwork which was considered a fire hazard.  (Compl. 11-12.)  The DSH now is going to declare these electronics that Plaintiff has been allowed to have since 2008 to be contraband.  (Compl. 12.)

Plaintiff has invested over one thousand dollars on DVD movies and has collected many series on hard drives for his personal use and viewing.  (Compl. 12.)  Plaintiff has been advised that pursuant to this new regulation he will only be allowed a combination of 30 music CD and DVDs.  (Compl. 12.)  Plaintiff contends this is punitive because CD and DVDs do not constitute a security threat to the institution.  (Compl. 12.)  Plaintiff was previously allowed to purchase blank DVD and readers/writers with the knowledge that they would be used to copy movies and music.  (Compl. 12.)  Sony, MGM, and Blu-Ray give permission to download movies on your personal media players to view, as well as streaming for series produced by Netflix, Disney, etc.  (Compl. 12.)  Plaintiff contends that taking copies of movies from patients who do not have money to buy the original movies amounts to cruel and unusual punishment.  (Compl. 12.)  Plaintiff contends that he bought his movies and series as originals and he should not have to send them home which he was previously allowed to possess without restriction just to satisfy a false security concern.  (Compl. 12.)

Finally, Plaintiff contends that the child pornography which the defendants are using to justify removing the memory storage devices was introduced into the hospital by state employees. (Compl. 12.) The state court records reflect that between nine months to one year ago, a state employee was apprehended bringing child pornography into the institution. (Compl. 12.) Cell phones, pornography, wireless devices, alcohol, drugs, and tobacco have been and continue to be introduced into the hospital by patients willing to pay for the contraband material to staff. (Compl. 12-13.) Plaintiff alleges that he should not be punished for the actions of other individuals. (Compl. 13.)

Plaintiff has been allowed to purchase these items for 4 to 5 years and then after some patients started misusing approved items, the DSH issues a blanket ruling declaring the items to be contraband thus punishing the innocent with the guilty. (Compl. 13.) Now all the money Plaintiff has spent purchasing the items at one and a half times their actual cost will be lost. (Compl. 13.) Plaintiff works as a janitor making $52.50 per month and it takes him more than six months to save the money to purchase an X-Box or tablet. (Compl. 13.) Plaintiff contends that taking away the items will make the institution more dangerous because the detainees will have no way to entertain themselves and it will open the door to violence. (Compl. 13.) Plaintiff argues that the least restrictive way to address the security concerns would be to stop allowing blank CDs and DVDs as well as DVD burners. (Compl. 13.) If defendants start to police their own employees (for example, Kory G. Cooper (child porn, etc.), Carla K. Magdaleno (tobacco, cell phones, etc.)) the criminal acts of the staff members and patients will cease. (Compl. 13.)

Plaintiff contends that Pam Ahlin and Brandon Price violate his rights under the First and Fourteenth Amendments by denying him access to the internet. (Compl. 15.) Plaintiff is not allowed any electronic devices or any internet access, yet in San Francisco County Jail more than 200 adult inmates acquire skills and earn high school credits using tables provided by the American Prison Data Systems. (Compl. 15.) Eight states, Ohio, North Dakota, Georgia, Louisiana, Virginia, Michigan, Washington, and Colorado, now regularly allow their prison inmates to possess tablets. (Compl. 15.) A prison in North Dakota addressed the security concerns by limiting the electronics provided to one tablet that can be remotely and cheaply monitored by

professionals off site. (Compl. 16.) Defendants have not explained why this or any other less drastic alternative was not considered prior to institution of a total ban. (Compl. 16.)

Plaintiff seeks a declaration of his rights with regards to his games and electronic devices which connect to the internet and an order preventing the DSH from implementing the regulation declaring his memory devices, DVDs, CDs and related non-wireless devices as contraband. (Compl. 18.)

## III.

## DISCUSSION

Plaintiff is detained as a SVP pursuant to the SVPA. An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1). The SVPA authorizes the involuntary civil commitment of a person who has completed a prison term, but has been given a "full evaluation" and found to be a SVP. Reilly v. Superior Court, 57 Cal.4th 641, 646 (2013). "[SVPs] are involuntarily committed because their mental disease makes them dangerous to others." Seaton v. Mayberg, 610 F.3d 530, 540 (9th Cir. 2010).

### A.    Nature of Action against Defendants

Here, Plaintiff does not specify whether he is bringing claims against the defendants in their individual or official capacity. The court looks to the basis of the claims asserted and the nature of the relief sought to determine if the claims are asserted against the defendants in their individual or official capacity. Cent. Reserve Life of N. Am. Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir. 1988).

Personal capacity suits seek to impose individual liability on the government official for actions taken under the color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991). To state an individual capacity claim, the plaintiff must show that the actions of the defendant caused the deprivation of a federal rights. Id.

///

An official capacity suit on the other hand is equivalent to a suit against the state itself alleging that the agency's policy or custom played a part in the violation of federal law. Hafer, 502 U.S. at 25. Further, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

The complaint filed here does not contain any allegations that the named defendants engaged in any individual wrongdoing. Plaintiff alleges that the named defendants are responsible for implementing a policy that prohibits him from possessing certain electronic devices and accessing the internet. Plaintiff is attempting to hold the defendants liable for official policies and procedures that are implemented by DSH. Additionally, Plaintiff does not seek monetary damages, but is seeking declaratory and injunctive relief. The nature of the suit clearly indicates that Plaintiff is bringing this action against the defendants in their official capacities. Accordingly, if any claims are stated in this action, they shall proceed as official capacity claims.

## B. Fourteenth Amendment

### 1. Punitive Nature of Section 4350

Plaintiff's first cause of action alleges that on December 27, 2017, Plaintiff received a copy of a proposed revision to section 4350 of Title 9 of the California Code of Regulations. (Compl. 6.) Plaintiff contends that he is being subjected to a regulation that is intended to apply to prisoners serving a punitive term of commitment. Plaintiff argues that he is entitled to receive more considerate treatment than those serving a punitive sentence and subjecting a civil detainee to a regulation under Title 9 violates his rights under the First, Fourth, Fifth, and Fourteenth Amendments.

To determine whether conditions of confinement of civilly committed individuals have been violated, courts look to the substantive due process clause of the Fourteenth Amendment. Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982); Jones v. Blanas, 393 F.3d 918, 931-32 (9th Cir. 2004). States are thus required "to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," and to provide "more considerate treatment and conditions of confinement than criminals whose conditions of

confinement are designed to punish." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citations omitted).

Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners, to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012) (citing Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), vacated and remanded on other grounds by 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991), abrogated on other grounds by 511 U.S. 825 (1994). But the conditions under which civil detainees are held cannot be harsher than those under which prisoners are detained except where the statute itself creates a relevant difference. Hydrick, 500 F.3d at 989 n.7.

The Due Process Clause requires that the nature and duration of the civil commitment must bear some reasonable relation to the purpose for with the individual is committed. Jones, 393 F.3d at 931. However, civilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose. Bell v. Wolfish, 441 U.S. 520, 535 (1979). "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a 'least restrictive alternative.' " Valdez v. Rosenbalm, 302 F.3d 1039, 1046 (9th Cir. 2002) (citations omitted). The only question is whether the defendants might reasonably have thought that the policy would advance its interests. Id.

Under Ninth Circuit precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to [its non-punitive] purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods[.]" Jones, 393 F.3d at 934 (citations omitted). "[A] presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions

more restrictive than those he or she would face upon commitment." Id. This presumption can be rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions imposed. Id.

Plaintiff alleges that he is being subjected to a regulation that is designed for prisoners serving a sentence for penal commitment at the DSH for mental illness. Further, Plaintiff contends that the conditions under which he is being detained are more restrictive than the conditions of prisoners in the custody of the California State Prison. Plaintiff also contends that there are less restrictive alternatives that could be imposed and he is being punished for the wrongdoing of other individuals although he has never violated any hospital policy, or state or federal law concerning the ownership of his electronic devices. Here, the Court finds that Plaintiff has alleged sufficient facts to state a plausible claim that section 4350 is punitive in nature.

Additionally, Plaintiff alleges that Defendants have implemented proposed changes further restricting his ability to own and possess storage devices. The Court takes judicial notice that the proposed changes to section 4359 were operative on January 12, 2018. See History Notes for Cal. Code Regs. tit. 9, § 4350.

Defendants may be able to provide reasonable justification for the ban on the relevant devices, but at the pleading stage, Plaintiff's allegations are sufficient to state a cognizable conditions of confinement claim based on the ban on ownership of electronic devices and items.

2.    Prohibition Regarding Items that Cannot Connect to Internet nor Have Memory Storage Capacity

Plaintiff contends that the regulation is over broad because it does not distinguish between electronic items that are internet capable, and devices that have no internet capability like a common radio. Plaintiff contends that section 4350 allows Defendants to seize any electronic device as internet capable. Since the purpose of section 4350 and the amendments are alleged to be to control the introduction of child pornography and contraband into the facility, it is unclear how prohibiting devices that have no ability to connect to the internet or storage capacity would further this goal. Liberally construed, Plaintiff's allegation that the regulation prohibits devices that are incapable of connecting to the internet and have no storage capacity states a cognizable

claim.

Plaintiff also alleges that he is being deprived of his legal files and the previous order found that this claim could proceed, however this Court respectfully disagrees. Plaintiff alleges that he has been allowed to scan his legal work to digital copies and stored these copies on personal hard drives to remove excess storage of paperwork which was considered a fire hazard. (Compl. 11-12.) However, these hard drives allow for copying of digital material which would include the illegal child pornography which has been introduced into the facility and that the regulation has been enacted to address. Although Plaintiff contends that he will no longer be allowed to keep digital copies of his legal material, there are no allegations that patients are restricted from maintaining paper copies of their legal files and documents. While electronic copies may be more convenient to maintain, due process does not require the institution to provide the most convenient manner in which to access legal files. Plaintiff has failed to state a claim that prohibiting devices that provide for memory storage is over broad or excessive in relation to a non-punitive purpose.

3.   Procedural Due Process

It is unclear if Plaintiff is attempting to allege a procedural due process claim. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 563 (1974), and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized, intentional deprivations of property are actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). However, the Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy. Hudson, 468 U.S. at 533; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

To have a property interest, Plaintiff must demonstrate "more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). As previously found in the prior screening order, the question is whether an individual awaiting civil commitment has a property right to items in his possession that were once, but no longer, authorized, where Plaintiff is allowed

to transfer those items to a third party of his choosing outside the institution.

While the Ninth Circuit has not yet reached this issue, other courts have found that "while an inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison." Searcy v. Simmons, 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002)). Thus, courts have found that when property policies are revised to prohibit items but inmates and detainees are allowed to store the items outside of the institution, no property interest is implicated and no process is due. See e.g., Graham v. Sharp, No. 10-5563 (SRC), 2011 WL 2491374, at *15-16 (D.N.J. June 20, 2011) (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); Davis v. Powers, No. C08-5751 FDB/KLS, 2010 WL 2163134, at *10-11 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be returned because it was in conflict with regulations); Trenton v. Schriro, No. CIV 06-2905-PHX-MHM (DKD), 2007 WL 2572345, at 1-2 (D. Ariz. Sept. 74, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); Dunbar v. A.D.O.C., No. CV 08-420-PHX-SMM (MEA), 2008 WL 2038026, at *4 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations); see also Knight v. Yarborough, No. CV 03-01210-AG (VBK), 2011 WL 4550190, at *18 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish.")

Section 4350 provides that if an inmate consents to search of the property that was in their possession at the time that the regulation was implemented such property will be mailed to a location designated by the patient if no contraband is found following the search. Cal. Code Regs. tit. 9, § 4350(e). This Court agrees that since Plaintiff can mail his property to a location of his choice as long as it does not contain any illegal material, he will retain ownership of the items. As Plaintiff retains ownership of the items that are free of illicit materials, no deprivation will have occurred and no protected property rights will be implicated; therefore, there is no process due.

See Valdez, 302 F.3d at 1045 (where there is no state created property interest the procedural due process claim fails).

Further, any procedural due process requirements appear to have been met in this case. "Where the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Halverson v. Skagit Cty., 42 F.3d 1257, 1260 (9th Cir. 1994), as amended on denial of reh'g (Feb. 9, 1995). The regulation does not target Plaintiff or his property, but applies to all individuals that are detained in the DSH. '[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." Halverson, 42 F.3d at 1261 (9th Cir. 1994).

As attached to Plaintiff's original complaint, the CDCR provided notice and an opportunity to comment on December 22, 2017. (Finding of Emergency and Emergency Regulation Text, attached to complaint at pp. 23-36, ECF No. 1.) Plaintiff fails to state a cognizable procedural due process claim based on the amendment to section 4350.

## C. Internet Access Claim

Plaintiff contends that Defendants Ahlin and Price have violated his rights under the First and Fourteenth Amendment by denying him internet access. Plaintiff contends that he is not allowed any internet access no matter how limited. However, section 4350 states:

> Electronic devices with the capability to connect to a wired (for example, Ethernet, Plain Old Telephone Service (POTS), Fiber Optic) and/or a wireless (for example, Bluetooth, Cellular, Wi-Fi [802.11a/b/g/n], WiMAX) communications network to send and/or receive information are prohibited, including devices without native capabilities that can be modified for network communication. The modification may or may not be supported by the product vendor and may be a hardware and/or software configuration change. Some examples of the prohibited devices include desktop computers, laptop computers, cellular phones, electronic gaming devices, personal digital assistant (PDA), graphing calculators, and radios (satellite, shortwave, CB and GPS).

Cal. Code Regs. tit. 9, § 4350.

Section 4350 prohibits Plaintiff from possessing certain devices that connect to the internet, but it does not prohibit Plaintiff from accessing the internet. Section 891 provides that "[n]on LPS

patients shall not have access to the internet." Cal. Code Regs. tit. 9, § 891. "Non-LPS" means that the placement in or commitment to the facility is pursuant to legal authority other than the Lanterman-Petris-Short (LPS) Act, commencing with Section 5000, of Part 1, Division 5 of the Welfare and Institutions Code)." Cal. Code Regs. tit. 9, § 881(o). The LPS Act governs involuntary treatment of the mentally ill in California. In re Conservatorship & Estate of George H., 169 Cal.App.4th 157, 159 (2008). In contrast the SVPA targets "a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated." Cooley v. Superior Court, 29 Cal. 4th 228, 253 (2002), as modified (Jan. 15, 2003). Further, section 4350 itself provides that while Plaintiff shall not be in personal possession of the electronic devices, the facility has the discretion to make such devices accessible to the patient on a supervised basis. Cal. Code Regs. tit. 9, § 4350(d).

Simply because inmates retain certain rights does not mean that their rights are not subject to restrictions and limitations. Wolfish, 441 U.S. at 545. Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff, 418 U.S. at 556. This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

An inmate does not retain rights inconsistent with proper incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). This includes those First Amendment rights that are inconsistent with status as a prisoner or with the legitimate penological objectives of the corrections system. Jones v. N. Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129 (U.S. 1977). For example, the Supreme Court has held that freedom of association is among those rights least compatible with incarceration and some curtailment of the freedom must be expected. Overton, 539 U.S. at 132; see also Pell v. Procunier, 417 U.S. 817, 826 (1974) (limitations on press

interviews); <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 405 (1989) (regulation allowing rejection of incoming mail that was determined be detrimental to security, good order or discipline of the institution or if it might facilitate criminal activity); <u>Block v. Rutherford</u>, 468 U.S. 576, 591 (1984) (denial of contact visits).

Further, courts have routinely held that denying a SVP the right to access the internet does not violate the First Amendment. <u>See</u> <u>Telucci v. Withrow</u>, No. 116CV00025JLTPC, 2016 WL 2930629, at *5-6 (E.D. Cal. May 19, 2016); <u>Consiglio v. King</u>, No. 115CV00969BAMPC, 2016 WL 4000001, at *3-4 (E.D. Cal. July 25, 2016); <u>Cerniglia v. Price</u>, No. 117CV00753AWIJLTPC, 2017 WL 4865452, at *4 (E.D. Cal. Oct. 27, 2017); <u>Carmony v. Cty. of Sacramento</u>, No. CIV S-05-1679LKKGGHP, 2008 WL 435343, at *18 (E.D. Cal. Feb. 14, 2008), report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 795101 (E.D. Cal. Mar. 25, 2008), order vacated on denial of reconsideration (Apr. 9, 2008), and report and recommendation adopted, No. CIVS051679LKKGGHP, 2008 WL 2477646 (E.D. Cal. June 17, 2008). Plaintiff's complaint on its face demonstrates that the regulations restricting access to the internet are in place to address issues with child pornography at DSH and that this continues to be a problem at CSH. (Compl. 12, 13.)

Plaintiff alleges that his rights under the First Amendment to gather news, express himself to others, and buy and shop on the internet is being violated. "The law generally requires a careful balancing of the rights of individuals who are detained for treatment, not punishment, against the state's interests in institutional security and the safety of those housed at the facility." <u>Hydrick</u>, 500 F.3d at 994. "In weighing those interests, it cannot be ignored that . . . SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." <u>Id.</u> "Therefore, the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." <u>Id.</u>

Four factors are relevant in deciding whether a regulation affecting a constitutional right that survives detainment withstands constitutional challenge: (1) whether the regulation has a valid, rational connection to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right

1   would have on guards and detainees and facility resources; and (4) whether there are ready

2   alternatives to the regulation.  Overton, 539 U.S. at 131-132 (internal quotation marks omitted)

3   (citing Turner v. Safley, 482 U.S. 78, 89-91(1987)).

4        While Plaintiff alleges that he is being denied the right to gather news, express himself to

5   others, and shop and buy on the internet, a computer is just one means for Plaintiff to accomplish

6   these tasks.  Plaintiff has other means than the internet to gather news, communicate, and shop

7   such as by television, mail, or telephone.  Plaintiff's first amended complaint does not allege that

8   his lawful communication or speech is not allowed by other means.  Therefore, the Court finds that

9   Plaintiff has failed to state a claim under the First or Fourteenth Amendment based on denial of

10  access to the internet.

11       **D.     Double Jeopardy and Ex Post Facto Claims**

12       Plaintiff alleges that applying section 4350 to him violates the Double Jeopardy and Ex

13  Post Facto clauses of the Constitution.   The Double Jeopardy Clause precludes "a second

14  prosecution for the same offense," and prevents "the State from 'punishing twice, or attempting a

15  second time to punish criminally, for the same offense.'"  Kansas v. Hendricks, 521 U.S. 346, 369

16  (1997) (quoting Witte v. United States, 515 U.S. 389, 396 (1995)).

17       Article I, § 10, of the Constitution provides that no state shall pass any ex post facto law.

18  "To fall within the ex post facto prohibition, a law must be retrospective-that is, 'it must apply to

19  events occurring before its enactment'-and it 'must disadvantage the offender affected by it,' by

20  altering the definition of criminal conduct or increasing the punishment for the crime[.]  Lynce v.

21  Mathis, 519 U.S. 433, 441 (1997) (internal citations omitted).

22       In Hydrick, the Ninth Circuit Court held that the SVPA is civil in nature and claims

23  challenging the Act under the Double Jeopardy and Ex Post Facto Clauses were foreclosed.

24  Hydrick, 500 F.3d at 993-994.  Here, Plaintiff is challenging a regulation that is civil in nature and

25  claims that the regulation as applied is punitive.  However, such claims are properly raised under

26  the Substantive Due Process Clause as Plaintiff has done in this action.

27       A statute that is civil in nature cannot be deemed to be punitive in nature as applied to

28  Plaintiff in violation of the Double Jeopardy and Ex Post Facto Clause.  Seling v. Young, 531 U.S.

250, 267 (2001). Plaintiff's challenge on double jeopardy and ex post facto grounds fails as a matter of law.

### E. Fourth Amendment

Plaintiff generally alleges a right under the Fourth Amendment to own and retain his personal property. The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. The Fourth Amendment prohibition against unreasonable search and seizure extends to incarcerated prisoners and civil detainees. Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (prisoners); Hydrick, 500 F.3d at 993 (civil detainees). However, "the reasonableness of a particular search is determined by reference to the prison context." Hydrick, 500 F.3d at 993 (quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)). Confinement in a state institution raises concerns similar to those raised by housing pretrial detainees, such as "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." Hydrick, 550 F.3d at 993 (quoting Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)).

For the Fourth Amendment to apply, there must be a reasonable expectation of privacy in the place that is invaded. Espinosa v. City & Cty. of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). "The contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear, but assuming Plaintiff retains any reasonable expectation of privacy at all in his living area at CSH, it would necessarily be of a diminished scope given Plaintiff's civil confinement." Warrior v. Santiago, No. 116CV01504AWIGSAPC, 2018 WL 827616, at *4 (E.D. Cal. Feb. 12, 2018) (collecting cases). Although Plaintiff is not a convicted criminal, "he is involuntarily serving a civil commitment term at a secure facility; and he is not a free individual with a full panoply of rights." Ryan v. Siqueiros, No. 1:15-CV-01152 DLB PC, 2016 WL 2898450, at *2 (E.D. Cal. May 18, 2016). Although civil detainees are entitled to more considerate treatment and conditions of confinement than prisoners, Youngberg, 457 U.S. at 322, maintaining facility security and effectively managing the institution are unquestionably legitimate, non-punitive government interests, Jones, 393 F.3d at 932.

1    While the amendments to section 4350 provide that certain items that were previously
2    allowed are now considered contraband, Plaintiff does not have a reasonable expectation of
3    privacy in possessing contraband.  Accordingly, the complaint fails to state a cognizable claim for
4    violation of the Fourth Amendment.

5    ### F.    Fifth Amendment

6    Plaintiff alleges a violation of his rights under the Fifth Amendment.  "[T]he Fifth
7    Amendment's due process clause applies only to the federal government."  Bingue v. Prunchak,
8    512 F.3d 1169, 1174 (9th Cir. 2008).  Since all Defendants in this action are state employees the
9    Fifth Amendment does not apply.

10   ### G.    Declaratory Relief

11   Plaintiff seeks an order declaring his constitutional rights.  "A case or controversy exists
12   justifying declaratory relief only when the challenged government activity is not contingent, has
13   not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well
14   be a substantial adverse effect on the interests of the petitioning parties."  Feldman v. Bomar, 518
15   F.3d 637, 642 (9th Cir. 2008) (quoting Headwaters, Inc. v. Bureau of Land Management, Medford
16   Dist., 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)).
17   "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and
18   settling the legal relations in issue nor terminate the proceedings and afford relief from the
19   uncertainty and controversy faced by the parties."  U.S. v. State of Wash., 759 F.2d 1353, 1357
20   (9th Cir. 1985) (citations omitted).

21   In the event this action reaches trial and the jury returns a verdict in favor of Plaintiff, that
22   verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a
23   declaration that any defendant violated Plaintiff's rights is unnecessary in this action.  The Court
24   recommends that Plaintiff's request for declaratory relief be dismissed.

25   ### H.    Leave to Amend

26   In this action, Plaintiff has filed a response stating that he wishes to proceed on the claims
27   found to be cognizable in the March 5, 2018 screening order.  Since this Court has now screened
28   the complaint and made different findings, Plaintiff will be allowed to file an amended complaint

should he so desire. If Plaintiff files an amended complaint, this findings and recommendations will be vacated and the amended complaint will be screened to determine if it states any cognizable claims.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' " "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Should Plaintiff still wish to proceed on the claims that have been found cognizable in this order he need not do anything. However, he may file objections which will be considered by the district judge assigned to this action. If these findings and recommendations are adopting Plaintiff will then be provided with the service documents to complete and return.

///

# IV.

## CONCLUSION AND RECOMMENDATION

Plaintiff's complaint states a claim against Defendants Ahlin and Price for punitive conditions of confinement based on the ban on ownership of electronic devices and items in violation of the Fourteenth Amendment and that section 4350 is over broad based on the ban on devices that have no internet connectivity or storage capacity. However, Plaintiff has not sufficiently alleged facts to state any other cognizable claims.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed January 17, 2018, against Defendants Ahlin and Price in their official capacity on claims alleging punitive conditions of confinement in violation of the Fourteenth Amendment based on the ban on ownership of electronic devices and items and that section 4350 is over broad based on the ban on devices that have no internet connectivity or storage capacity;

2. All other claims be dismissed for failure to state a claim;

3. Plaintiff's request for declaratory relief be dismissed; and

4. If Plaintiff files an amended complaint within thirty (30) days of service of this findings and recommendation, the Court shall vacate the findings and recommendations.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 24, 2018**

UNITED STATES MAGISTRATE JUDGE